IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.  No. 05-20379-B

MARCUS PRICE,

    Defendant.

_____

**ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS**
_____

    Before the Court is the motion of the Defendant, Marcus Price, to suppress evidence seized from his vehicle occupied by him as a passenger and any statements made by the accused during the course of an investigatory stop by Memphis (Tennessee) Police Officers. Defendant was charged in a one count indictment with being a felon in possession of a firearm on July 3, 2005. This Court previously conducted a suppression hearing at which time, following the receipt of evidence and argument of counsel, the Court determined that based upon the totality of the circumstances, including a telephone call tip from a witness, Mandrell Crawford, on July 3, to 911, and the events following the receipt of that call, the police had reasonable suspicion to make an investigative stop of the vehicle in which Defendant was an occupant in order to determine whether criminal activity had occurred or was occurring. Thus, the Court found that Defendant's motion to suppress should be denied. Following that determination, the Defendant filed a motion to reconsider the motion to suppress indicating that the anonymous tip received by the police lacked sufficient indicia of reliability and, thus, did not provide a reasonable basis for the stop of the automobile which Price was occupying.

    The facts set forth at the hearing revealed that the caller, Mandrell Crawford, was at the Pic-n-Pay store on Cleveland Street in Memphis, Tennessee, and reported the activities he witnessed,

-1-

which occurred between approximately 11:00 p.m. and 12:00 a.m. to the 911 operator. At the hearing was a recording of the conversation between Crawford and the 911 dispatch which in substance provided the following information:

> that Crawford was at the Pic-n-Pay on Cleveland and Jefferson and reported that a person was about to rob the store. Crawford saw a black 9 mm pistol being held by a male black who was wearing an all white tank-top shirt with a white hat turned to the back. He was wearing blue jeans with the black pistol in his front pants pocket. He states that the person with the gun was at the corner store and that he had a passenger, a black female who was wearing an all white t-shirt and blue jeans. She had a black looking bandanna but he did not see her with a gun. At the time of this conversation, Crawford stated that he saw the two persons in the parking lot of the convenience store and were occupying a gray looking Dodge 4-door, Dodge Avenger or like a Stratus or like a 300-M. It was a dark grayish or blackish color. At the time he saw them they were on the side of the building and inside of a car. Crawford related that he saw the gun when the male black came out of the car looking around to see whether they were going to rob the place. He asked that the police come quickly since he could identify them. Apparently the suspects were outside like they were doing something, like they were trying to rob the place. Upon a response by the operator that she was going to get the police over there, Crawford asked them to please do so and told the officers to be careful. He asked that the police get there quickly before this person ends up "killing somebody at the store."

According to the 911 operator, she indicated that she would not tell the police who called but she was going to leave his phone number at the dispatch station in case the police needed to call him back.

Crawford admitted that he did not speak to the officers at the scene nor did he know what happened after he left following making this call.

Officer David Tacker with the Memphis Police Department testified that he received a call from dispatch between 11:00 p.m. and 12:00 a.m. and this call concerned two black individuals in a grey car, possibly a Dodge Intrepid. He drove to the Pic-n-Pay, saw a gray car pull away from the location and then called other uniformed officers. He did not stop the car himself because he had no siren or blue lights. He was informed that the driver had a gun. According to the officer, another police vehicle with uniformed officers did stop the Defendant's car. The Defendant was asked to get out of the car, whereupon he exited the vehicle and the officers saw a gun on the floorboard near where Price was seated. A female was also in the driver's seat. The Defendant was secured in handcuffs and the gun was retrieved.

One other witness, Dan Farrell, the Director of Communication of the Memphis Police Department did indicate that he checked to see if the Defendant's car was stolen and apparently it was not.

According to Defendant's motion to reconsider, Price claims that there was not a sufficient basis to stop Price's automobile solely created by the information provided to the police from the anonymous tipster.

The Fourth Amendment guarantees that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. "Generally, this means that, with some specifically delineated exceptions, every governmental search and seizure must be made pursuant to a warrant." United States v. Taylor, 248 F.3d 506, 511 (6th Cir.), cert. denied, ____ U.S. ____, 122 S.Ct. 414, 151 L.Ed.2d 315 (2001). "Evidence obtained by a search and seizure that violates the Fourth Amendment is inadmissible in a criminal trial." United States v. Wright, 16 F.3d 1429, 1434 (6th Cir.), cert. denied, 512 U.S. 1243, 114 S.Ct. 2759, 129 L.Ed.2d 874 (1994) (footnote omitted).

The Sixth Circuit has identified three types of permissible encounters between citizens and the police: "(1) the consensual encounter, which may be initiated without any objective level of suspicion; (2) the investigative detention, which, if non-consensual, must be supported by a reasonable, articulable suspicion of criminal activity; and (3) the arrest, valid only if supported by probable cause." United States v. Waldon, 206 F.3d 597, 602 (6th Cir.), cert. denied, 531 U.S. 881, 121 S.Ct. 193, 148 L.Ed.2d 134 (2000) (quoting United States v. Avery, 137 F.3d 343, 352 (6th Cir. 1997)). An investigative detention as contemplated by Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) requires neither probable cause nor a search warrant and is a judicially carved-out exception to the general Fourth Amendment rule. McPherson v. Kelsey, 125 F.3d 989, 993 (6th Cir. 1997), cert. denied, 523 U.S. 1050, 118 S.Ct. 1370, 140 L.Ed.2d 518 (1998).

The Fourth Amendment is satisfied with respect to an investigative stop "if the officer's action is supported by reasonable suspicion to believe that criminal activity may be afoot," even if probable cause is absent. United States v. Arvizu, 534 U.S. 266, 273, 122 S.Ct. 744, 750, 151 L.Ed.2d 740 (2002) (citations and internal quotation marks omitted); United States v. Bailey, 302 F.3d 652, 658 (6th Cir. 2002). The officer must be able to point to "specific and articulable facts justifying his or her reasonable suspicion that the suspect has been or is about to be involved in criminal activity." An inarticulate hunch is not sufficient to support an investigative stop under Terry. United States v. Martin, 289 F.3d 392, 396 (6th Cir. 2002) (internal quotation marks omitted).

Under the circumstances of this police encounter, there is no dispute that a warrant was not obtained nor was probable cause to arrest present. Therefore, the Court must ascertain whether a sufficient basis to perform an investigative stop existed from the tip along with other information possessed by the police.

In analyzing tips, generally in situations where probable cause, rather than reasonable suspicion, was the governing standard, the Supreme Court for many years applied the two-pronged Aguilar-Spinelli test[1], under which courts were to consider (1) the basis of the source's knowledge and (2) the informant's veracity. See United States v. Payne, 181 F.3d 781, 789 (6th Cir. 1999), reh'g denied (Aug. 17, 1999). The Court later abandoned this approach in favor of one focusing on the totality of the circumstances. See Alabama v. White, 496 U.S. 325, 328, 110 S.Ct. 2412, 2415, 110 L.Ed.2d 301 (1990) (citing Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)). The Aguilar-Spinelli factors, however, remain "highly relevant" in determining the value of an informants's tip. See id., 110 S.Ct. at 2415.

An anonymous tip, when corroborated by independent police work, may exhibit "sufficient indicia of reliability" to justify a stop. Id. at 332, 110 S.Ct. at 2417. "[C]ourts have been willing to

---

[1] The test arose from the Supreme Court's decisions in Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969).

find reasonable suspicion based on either the government's having corroborated some aspects of a detailed tip or the informant's having a proven track record of providing reliable information." Payne, 181 F.3d at 790 (citing White and Adams v. Williams, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972)(emphasis in original).

In United States v. Bentley, 29 F.3d 1073 (6th Cir.), cert. denied, 513 U.S. 1028, 115 S.Ct. 604, 130 L.Ed.2d 515 (1994), in which a businessman, who was known to agents but who had never before acted as an informant, tipped police that an individual had attempted to sell guns to him which he suspected were stolen. He told officers that the seller was a black male driving a green and tan Explorer with Ohio plates and that he was carrying a female passenger. He further described where the guns were located in the vehicle and advised that it was traveling north on Westerville Road toward Schrock Road. Bentley, 29 F.3d at 1074. Officers located the Explorer, driven by a black male with a female passenger, in the vicinity of Schrock road. The guns were found after a forcible stop of the automobile. Id. At 1074-75. The defendant argued, among other things, that the officers had no specific information the guns were stolen and no knowledge that the individual was a felon, that the source had no history as a reliable informant, and that agents were aware at the time of the stop that the informant had falsely predicted the seller would return to the source's business. The Sixth Circuit stated as follows:

> [T]he source's information had already been verified to a significant extent. The agents had already verified that the source had accurately described the vehicle, its passengers, and the direction in which it was going. As the court below explained: With each confirmation of the specific nature of the tip, the reliability of the tip increased. Because of the actual verifications, it became reasonable for the officers to determine that the ...tip was reliable. Thus, the officers had reasonable grounds to believe that the remaining, but unverified, bit of the tip–that the Defendants were in possession of stolen firearms–was indeed true and accurate.

> Id. At 1076.

In this case, the Defendant argues that the factual situation of this case is controlled by the United States Supreme Court decision in Florida v. J. L., 529 U.S. 266 (2000). In that case, an unrecorded anonymous tip indicated that a young black male standing at a particular bus stop

wearing a plaid shirt was carry a gun.  The Court found that this vague description lacked sufficient indicia of reliability to establish reasonable suspicion to make a Terry investigative stop and, thus, affirmed the Florida Supreme Court that the motion to suppress should be granted.  Factually, in this case, there are some distinguishing aspects.  The telephone number of the tipster in this case, Mandrell Crawford, was left with the 911 dispatch.  He testified at the hearing that he made a call from the Pic-n-Pay store which was where the Defendant's vehicle was ultimately seen.  In contrast to the Florida case, certainly the police could take action to hold Crawford responsible if the call was determined to be a false report.  Furthermore, the recording of the actual call was presented at the hearing and the Court was able to listen to the statement given by Crawford as to what information he provided to the police.  In that call, as previously related, the tipster gave detailed information as to the identity and the clothing of the two occupants of the described vehicle, one of whom was carrying a weapon.  Although the circumstances of this case present a close question, the Court believes that there was sufficient articulable information given to the police to allow them to make an investigatory stop of the gray vehicle driven from the specific area detailed by Crawford when he made this call.  As was stated in a recent unreported decision of the Sixth Circuit, United States v. White, 162 Fed. Appx.520, 525 (6th Cir. 2006), the court found that a reported "white vehicle with tinted windows" passed by the residence as provided by a tipster, resulted in "the investigative stop of [the] vehicle [which] was not premised on a mere hunch, but on specific and articulable facts. United States v. Hurst, 228 F.3d 751, 757 (6th Cir. 2000)."  In the Hurst case, according to White, the Sixth Circuit determined that reasonable suspicion for a vehicle stop was found where the vehicle matching the description given was seen in a location consistent with the information provided.  As a result, the stop was upheld in Hurst.  See also United States v. Hardnett, 804 F.2d 383 (6th Cir. 1986) in which the Sixth Circuit affirmed the stop of a vehicle based upon an informant's disclosure, finding that "an informant's tip is sufficient to establish reasonable suspicion; and need not be based exclusively on an officer's personal observations."  Hardnett, 804 F.2d at 356.  Furthermore, the Hardnett court determined that when the police arrived at a scene that

-6-

was given to them by the tip, they observed a vehicle which matched one described by the tipster and under those circumstances, the Sixth Circuit found that the officers were justified in stopping the car. Under certain circumstances, the Sixth Circuit has permitted a stop of a vehicle where reasonable suspicion is present, that the car may produce evidence of a crime "even if the officers do not have reasonable suspicion to believe that the owner and/or driver of the vehicle was directly involved in the criminal activity." United States v. Marxen, 410 F.3d 326 (6th Cir. 2005).

Having again reviewed the evidence presented at the hearing on the motion to suppress, the Court affirms its previous decision and finds that there was, under the totality of circumstances, reasonable suspicion, from the phone call made by Mr. Crawford, that criminal activity was afoot and that this information, along with the events which subsequently unfolded when the officers arrived at the Pic-n-Pay store, to at least make an investigatory stop of the vehicle in which the Defendant was ultimately found. Certainly, when the door opened and Price exited, the officer, upon seeing the weapon inside the car in plain view, may conduct a further investigation which may result, as it did in this case, in the arrest of the Defendant.

Accordingly, for the reasons stated herein, the Defendant's motion to suppress is DENIED.

**IT IS SO ORDERED** this 25th day of August, 2006.

s/J. DANIEL BREEN
UNITED STATES DISTRICT JUDGE